DWIGHT C. STRATTMAN, ADMINISTRATOR, C. T. A. *vs.* EDWARD N. STRATTMAN ET ALS.

First Judicial District, Hartford, October Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A testator, who died in 1903, gave his wife, who owned nothing, one third of his property for her life, unconditionally, and the rest of it, also, for life if she did not remarry. In case she should remarry, he gave the two thirds or "rest" of his property to certain of his children equally; "but" with power to his wife to will all of his property of which she "retains" the life estate until her death, to such of his (and her) children as she may see fit. The widow did not remarry and lived in the dwelling-house which, with the adjoining land, constituted all her husband's realty, until her death in August, 1915. By her will, made in 1907, she gave this house and land to her daughter Frances, to whom she also quitclaimed her interest in it in 1912. The "rest" of the property and "all" of that "which belonged to my deceased husband," she gave in equal parts to nine of her children, including Frances. In a suit by the representative of the husband, brought after the widow's death, for advice as to the disposition of the property, it was *held:*—

1. That not having remarried, the widow unquestionably had the right, in the execution of the power conferred upon her, to designate by her will the child or children who should take the personal estate and the respective shares of each.

2. That the condition as to "retaining" the life estate was but a mode of expressing the testator's thought of his widow's remarriage and the non-retention or loss of the property consequent thereon; that

Strattman *v.* Strattman.

it did not refer to a transfer of her interest by deed, for which no forfeiture was provided, and which, if so construed, would result in intestacy in spite of the testator's presumed intent to the contrary, and therefore the real estate also remained subject to the widow's power of appointment by will.

3. That her will, although somewhat inartificially expressed as an execution of the power conferred upon her, was nevertheless sufficient, since she left no property of her own and therefore could not have intended to dispose of anything else but her husband's estate, all of which, moreover, was clearly referred to and embraced by the language of her will.

4. That while a literal construction of the clause purporting to give "all of the property which belonged to my deceased husband," to nine of her children would have deprived Frances of substantially all of the realty, it was manifest that the widow was here referring to all the property except the real estate devised to Frances by a previous clause of the will, and therefore, notwithstanding the apparent inconsistency, the expression would be construed accordingly.

Incidental questions which relate merely to procedure and do not call for a determination of the substantive rights of the parties under a will whose construction is asked, ought not to be included in those propounded for the advice of this court.

Argued October 3d, 1916—decided January 5th, 1917.

SUIT to determine the respective rights of the defendants in and to certain real and personal property under the will of William Strattman and the subsequent will of his wife, Catherine A. Strattman, both of Litchfield, deceased, brought to and reserved by the Superior Court in Litchfield County, *Greene, J.*, upon an agreed statement of facts, for the advice of this court.

William Strattman of Litchfield died May 17th, 1903, leaving real and personal property and a will thereafter admitted to probate. He left surviving him a widow, Catherine A. Strattman, and eleven children. The plaintiff, one of these children, was duly appointed administrator with the will annexed, and immediately proceeded to administer the estate. His administration account was accepted December 15th, 1903, and

showed as on hand certain real estate, to wit, a dwelling-house and land belonging therewith on South Plains in the town of Litchfield and $1,960 in cash. This sum of money has remained undistributed. By the will the testator gave to his wife, Catherine A. Strattman, one third of all his property for her life. Following this provision the will proceeds as follows:—

"I give, devise and bequeath to my said wife all the rest, residue and remainder of my property so long as she shall live and remain my widow.

"In the event that my wife should marry again after my decease, then I give, devise and bequeath all of my property, excepting the one third first above given to her, to my son Robert Strattman, to my daughter Katie Strattman, to my son Dwight M. Strattman, to my son Herman Strattman and to my son Edward Strattman to be divided equally between them.

"But I give my wife power to will all of my property of which she retains the life estate up to the time of her death to such of my children as she may see fit and to divide the same in such proportion among such of them as she thinks best having full confidence that she will do what is right and just—bearing in mind that I have hitherto made advancements to and aided my children not herein specially named more than I have the five above named."

His widow never remarried. She resided in the dwelling-house referred to and occupied said real estate during her life. In 1906 her daughter, Frances E. Gillett, now Mrs. Schazman, at the request of her mother, came to live with her and remained with and cared for her up to the time of the latter's death, which occurred August 30th, 1915. June 3d, 1912, the mother executed and delivered to Mrs. Schazman a quitclaim deed of her interest in the real estate. Mrs. Strattman left a will, made in 1907, duly probated and

of which the defendant Catlin was named executor and qualified as such. The disposing portion of this will is as follows:—

"I give and bequeath to my daughter, Frances E. Gillett, my household furniture of every kind except one bedroom set, my horse, harness, robes, and carriage, my wearing apparel, watch, chain and jewelry.

"I also give and devise to my said daughter Frances E. Gillett the dwelling-house and land where I now reside on South Plains, so-called in said town of Litchfield.

"I give and bequeath to my son Edward N. Strattman one cherry chamber set of furniture.

"I direct that all the rest, residue and remainder of my property and all of the property in which I hold a life estate and which belonged to my deceased husband William Strattman, be converted into money and divided into nine equal parts, and I give one of said parts to each one of my following named nine children to wit:—To Frances E. Gillett, Edward N. Strattman, John S. Strattman, Henry N. Strattman, Frederick R. Strattman, Herman B. Strattman, Dwight C. Strattman, Robert A. Strattman and Catherine A. Strattman."

Mrs. Strattman had no property save such as she derived through her husband's will.

The advice of the Superior Court is sought in answer to eighteen questions many of them substantially repetitious. In so far as they call for answer their substance is sufficiently indicated in the opinion.

*Frank B. Munn,* for Edward N. Strattman *et als.*

*Walter Holcomb,* for Frances Gillett Schazman *et als.*

PRENTICE, C. J. The plaintiff, as the administrator c. t. a. of the estate of William Strattman, who died in

1903, administered the deceased's estate pursuant to the will immediately following his death in so far as it could then be done. His account, accepted in December, 1903, showed remaining on hand certain real estate and $1,960 in cash. This property was, for obvious reasons, undistributed, and has remained undistributed for the purpose of carrying out the provisions of the will which, among other things, created life estates therein which have only recently been terminated by the death of the testator's widow, the life tenant. He now asks advice as to the construction and meaning of the will for his guidance in determining what, in view of events as they have transpired, he shall do with the property thus left on hand and undistributed.

Mr. Strattman's will gave to his wife the life use of one third of all his estate without condition or reservation. The remaining two thirds he also gave to her for life, but upon condition. That condition was performed so that she enjoyed her life estate in the two thirds down to the time of her death. The questions which now arise grow out of the provisions of the will which gave to the wife a power of appointment by her will. All of his property was made subject to the exercise of this power upon the single condition, as expressed in the will, that she "retain" the life estate in it up to the time of her death. The language of the instrument is clear in its provision that the power thus given attached to whatever property she so retained the life use of, and that failure to so retain, as respects certain property, would not put an end to the power in so far as other property was concerned.

As Mrs. Strattman did not remarry, there can be no question as to her right, in the execution of the power conferred upon her, to designate by her will the child or children who should take the personal estate

and their respective shares, if more than one were so designated. The only questions which can be raised affecting this share of the property are thus such as concern the execution of the power. With respect to the real estate, Mrs. Strattman's quitclaim to her daughter, Mrs. Schazman, gives rise to the additional question whether the power as to that property thereafter continued in existence.

The answer to this latter question is dependent upon the construction to be given to that part of the will which confines the execution of the power to such property of the testator as the widow retained the life estate therein down to the time of her death. We are of the opinion that this condition annexed to the widow's execution of the power was made with reference to, and solely with reference to, the contingency of her remarriage and the prescribed forfeiture, in that event.

The testator dealt with his estate in two parts. In one he gave his wife an unqualified and unconditional life estate; in the other a qualified and conditional one. He provided that her remarriage should terminate the latter, and not unnaturally also that the same act, which would bring her into new relations and surround her with new influences, should, in addition to terminating her enjoyment in the property, put an end to the right to supersede the provisions he had himself made for such contingency. The result of a remarriage was to destroy her life estate as fully as though it had never existed. Such a condition might be not inaptly expressed by the testator as non-retention by her. On the other hand, a transfer of her interest would have a quite different effect. The will did not provide for a forfeiture in such case. Her life estate would continue in existence notwithstanding that another might become entitled to its enjoyment through a conveyance.

from her, and would be attached to and measured by her life.

The place which this provision occupies in the will, immediately following that in which the testator himself makes a disposition of the two thirds in the event of his wife's remarriage, is significant. Having made a disposition of his own, which was limited to the two thirds, he at once proceeded to add, with an introductory "but," the provision for his wife's disposition if she retained the life estate.

It is also significant of the testator's purpose that he made a provision for the disposition of the two thirds in the event of his widow's remarriage, but none whatsoever in any other contingency, and none at all with respect to the one third. It is difficult to explain this feature of the will upon the theory that the testator's intention and understanding of his language was that other contingencies than remarriage should deprive his wife of the power of appointment. Upon such a theory and construction intestacy would result under conditions not unlikely to occur, and there is a presumption against the intent of a testator to leave any part of his estate intestate. *Wolfe* v. *Hatheway*, 81 Conn. 181, 186, 70 Atl. 645; *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957.

The questions which concern the execution of the power call for an examination of those portions of Mrs. Strattman's will which may be claimed to embody such execution. It is through those provisions that the will of Mr. Strattman may speak and have effect in the disposition of his property embraced within the power. *Bartlett* v. *Sears*, 81 Conn. 34, 42, 70 Atl. 33. Reference to Mrs. Strattman's will discloses that in one paragraph she gave to her daughter Mrs. Schazman the house and land in Litchfield constituting the real estate which her husband left, and that in another

paragraph she made a gift, which, whatever else may be said of it, certainly includes all the rest of her husband's estate, to wit, the personalty. Here we have in both cases the subject-matter embraced in the power clearly referred to and both paragraphs construed as intending gifts by the testatrix would be wholly inoperative. It is only when they are construed as in aid of the power that they can have operative effect. Such, therefore, will be their construction. *Hollister* v. *Shaw*, 46 Conn. 248, 252.

The correctness of this construction is emphasized by the further fact that Mrs. Strattman's will could have had no possible purpose or justification save as an attempt to execute the power given her by her husband. The finding is that she possessed no property which she could bestow by will. The making of the will was for her an idle ceremony except as she was seeking to execute the power of appointment given her by her husband. That it was made with the intent on her part to execute that power can scarcely be doubted.

The two provisions of Mrs. Strattman's will above referred to present a further question as to whether they are not, as respects the real estate, in conflict, and, if so, what results from that conflict. In the first of the two clauses she disposes of it to Mrs. Schazman, and in the latter uses language which, literally construed, would entitle the nine children named to share all of the property which belonged to her husband in which she had a life estate. So construed the real estate would be included in the subject-matter of the second disposition. But the courts are not bound to follow literal construction regardless of manifest intent. When it is borne in mind that Mrs. Strattman had no property of her own to bestow, it is impossible to read the last of the two clauses of her will referred to as intending a designation of the beneficiaries of all

the property of which she was permitted to designate the recipients. If so, why, for instance, does she speak of the "rest, residue and remainder"? Manifestly she meant what remained undisposed of by the preceding paragraphs. She had made disposition of certain of her husband's property in three previous paragraphs, and in one of them of the real estate. There remained the great bulk of his personal estate, and naturally and logically she passed to the disposition of that constituting the "rest, residue and remainder," as she correctly termed it. Whether by inadvertence of the scrivener the two words "of all" appearing in the paragraph in question became transposed and thus or otherwise the language used failed to express accurately her intended meaning, we know not, but it is too clear to be mistaken that the testatrix intended to provide for the disposition of the property she had not already, in the exercise of her power of appointment, disposed of, and that she intended that the disposition of the real estate to Mrs. Schazman previously made should stand.

Certain incidental questions, relating to probate court procedure and not pertaining to the construction of Mr. Strattman's will nor calling for a determination of the substantive rights of the parties under it, are improperly included in those propounded for the court's advice. Those which do concern such construction or substantive rights, stated in various forms in the complaint, are either directly or indirectly answered in the conclusions above reached and the advice directed to be given by the Superior Court.

The Superior Court is advised to render its judgment of advice (1) that the defendant, Frances Gillett Schazman, is entitled to the dwelling-house and land therewith in Litchfield constituting the real estate left by the testator, William Strattman, as his devisee under his will operating through the power of appointment

given by him to his wife, and (2) that the plaintiff, as administrator, should cause the $1,960 in his hands to be distributed to the persons designated as its recipients in Mrs. Strattman's will, and in the proportions as so designated.

No costs in this court will be taxed in favor of any of the parties.

In the opinion the other judges concurred.